# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM GOMEZ,<br>Plaintiff,<br>v.<br>CEA INDUSTRIES, INC., et al.,<br>Defendants. | Case No. 1:26-cv-02403-KES-SAB<br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTIONS TO DISMISS<br>(ECF No. 13, 35)<br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court are motions to dismiss filed by Defendant CEA Industries, Inc. ("CEA") and Defendant Hans Thomas. The Court held a hearing on the matter on August 26, 2026. Counsel Timothy Reynolds and Brian Kaewert appeared on behalf of Plaintiff, counsel Johanna Fay and Stephen Palley appeared on behalf Defendant CEA, and counsel Jianjuan Ye and Sara Pollock appeared on behalf of Defendant Thomas. Having considered the briefing, the record, and the arguments presented at the August 26, 2026 hearing, the Court will recommend that Defendants' motions to dismiss be granted.

## I.

## BACKGROUND

Plaintiff is an investor and entrepreneur residing in California. (ECF No. 2 ("Compl.") ¶ 2.) Defendant CEA is a Nevada corporation "focused on building and managing the world's largest corporate treasury of BNB." (Id. at ¶ 12.) Defendant Hans Thomas is a former director

of CEA[1] and a resident of New York. (Id. at ¶ 13.)

Plaintiff alleges that in July 2025, he began discussions with CEA regarding a potential investment in the company. (Id. at ¶ 20.) Plaintiff alleges he was a friend of CEA's CEO, David Namdar, and offered to invest in CEA "to support his friend, and believing that CEA could be a profitable investment[.]" (Id. at ¶¶ 19-20.) Plaintiff ultimately invested $14 million in CEA. (Id. at ¶ 20.)

On July 31, 2025, Plaintiff visited CEA's offices and was introduced to Defendant Thomas for the first time. (Id. at ¶ 22.) Plaintiff alleges that during this visit he observed CEA lacked "several essential business functions" and thereafter, together with members of his team, assisted CEA by preparing two press releases to communicate positive messages regarding CEA and its business. (Id. at ¶¶ 22-23.)

On or about August 11, 2025, Plaintiff met with Namdar and Defendant Thomas to discuss Plaintiff's continued involvement with CEA. (Id. at ¶ 26.) Plaintiff alleges that during this meeting, Namdar left the room at Thomas's request, and in Namdar's absence, Thomas offered Plaintiff $4 million worth of shares in exchange for an additional $3 million cash investment in CEA stock. (Id. at ¶¶ 26-27.) Plaintiff further alleges that Thomas reaffirmed this promise on multiple occasions, including through electronic communications and at an in-person conference in Jackson Hole, Wyoming. (Id. at ¶¶ 30-31.) On or about August 22, 2025, Plaintiff wired his additional $3 million in reliance on these representations. (Id. at ¶ 32.)

Plaintiff alleges that beginning in August 2025, Plaintiff and his team performed additional services for CEA, including website development, drafting articles and advertisement content, producing investor presentations, and managing marketing functions. (Id. at ¶¶ 24, 33-34.) Plaintiff alleges that these services were performed based on an understanding that CEA would compensate him for his services and out-of-pocket expenses, and that Thomas promised Plaintiff $250,000 per month for such services. (Id. at ¶¶ 33, 35, 38.)

Plaintiff alleges that although he received shares reflecting his initial investment, he did

[1] The Court takes judicial notice of the CEA Form 8-K dated March 23, 2026, stating that on March 20, 2026, Defendant Thomas informed the Board of Directors of his resignation from the Board effective immediately. See https://www.sec.gov/Archives/edgar/data/1482541/000149315226012203/form8-k.htm (last visited June 17, 2026).

not receive the full amount of shares or compensation allegedly promised in connection with the subsequent investment and consulting services. (Id. at ¶¶ 42, 45.) Rather, Plaintiff alleges that CEA provided only $3 million worth of additional shares and, despite his requests, Defendants have refused to provide the remaining shares. (Id. at ¶¶ 43-44.) Plaintiff further alleges that Defendants have not provided the agreed compensation for his services and have paid only $50,000. (Id. at ¶ 46.)

Defendant CEA removed this action on March 27, 2026. (ECF No. 1.) Plaintiff's complaint brings the four causes of action: 1) fraud; 2) promissory estoppel; 3) quantum meruit; and 4) unjust enrichment. (ECF No. 2.) On April 3, 2026, Defendant CEA filed its motion to dismiss for lack of personal jurisdiction and failure to state a claim. (ECF No. 13.) The assigned District Judge referred the motion to the undersigned for the preparation of findings and recommendations. (ECF No. 15.) The motion was fully briefed. (ECF Nos. 20, 23).

On June 23, 2026, Defendant Thomas filed a notice of appearance and a motion for administrative relief. (ECF No. 25, 26.) At the scheduled hearing for Defendant CEA's motion to dismiss, June 24, 2026, counsel for Defendant Thomas appeared and the Court heard arguments from the parties regarding the motion for administrative relief. (ECF No. 28.) The Court thereafter continued Defendant CEA's motion to dismiss to hear Defendant Thomas's forthcoming motion to dismiss jointly. (Id.) Defendant Thomas's motion has been fully briefed (ECF Nos. 35, 37-38), and on August 26, 2026, the Court held a hearing on the matter. (ECF No. 39.)

## II.

## LEGAL STANDARDS

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal based on lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). When the court's determination "is based on written materials than an

evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" Id. (quoting Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). The court may consider evidence presented in affidavits and declarations in determining personal jurisdiction. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). The court must accept as true all uncontroverted allegations in the complaint and must resolve conflicts regarding statements contained in affidavits in the plaintiff's favor. Ranza v. Nike, 793 F.3d 1059, 1073 (9th Cir. 2015).

**B. Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

/ / /

/ / /

/ / /

## III.

## DISCUSSION

Both Defendant CEA and Defendant Thomas move to dismiss Plaintiff's complaint for lack of personal jurisdiction or, in the alternative, motion to dismiss for failure to state a claim. (ECF Nos. 13, 35.) For the reasons that follow, the undersigned will recommend that the Court grant Defendants' motions.

### A. Personal Jurisdiction

The Court first considers whether it may exercise personal jurisdiction over Defendants. Defendant CEA and Defendant Thomas contend that Plaintiff has failed to establish that the Court has either general or specific personal jurisdiction over them. (ECF Nos. 13, 35.) Plaintiff does not contend that the Court has general jurisdiction over Defendants and argues only that the Court has specific jurisdiction. (ECF No. 20, p. 5; ECF No. 37, p. 13.) Therefore, the Court will limit its analysis to specific jurisdiction only.

For a court to exercise specific jurisdiction, "'the suit' must 'arise out of or relate to the defendant's contacts with the forum.'" Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty., 137 S. Ct. 1773, 1780 (2017). The Ninth Circuit uses a three-part test to determine whether a defendant has sufficient contacts with the forum state to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct their activities or consummate some transaction with the forum or resident thereof, or perform some act by which they purposefully avail themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

Schwarzenegger, 374 F.3d 797, 802 (9th Cir. 2004). The Supreme Court has emphasized that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State" itself, not with persons who reside there. Walden v. Fiore, 134 S. Ct. 1115, 1123-26 (2014). The

plaintiff bears the burden of satisfying the first two prongs of this test. Schwarzenegger, 374 F.3d at 802. "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Id. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id.

1. Purposeful Availment or Purposeful Direction

"[T]he first prong of the personal jurisdiction test may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." Briskin v. Shopify, Inc., 135 F.4th 739, 751 n.10 (9th Cir. 2025) (quoting Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th 1154, 1162 (9th Cir. 2023)). "The exact form of [the court's] jurisdictional inquiry depends on the nature of the claim at issue." Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). For claims sounding in contract, a purposeful availment test is used; for claims sounding in tort a purposeful direction test is used. Id. at 1212. Because Plaintiff asserts both a contract and tort claim, both tests are at issue.

a. *Purposeful Availment*

To satisfy purposeful availment, "a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008). "An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident." HK China Grp., Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp., 417 F. Appx 664, 666 (9th Cir. 2011) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). Rather, the test is satisfied "where the defendant 'deliberately' has engaged in significant activities within [the] State, or has created 'continuing obligations' between himself and residents of the forum," because then the defendant "manifestly has availed himself of the privilege of conducting business" in the forum. Burger King Corp., 471 U.S. at 475-76.

(1) Defendant CEA

Defendant CEA argues that Plaintiff cannot meet either purposeful availment or direction because its interactions with Plaintiff exclusively took place outside of California or occurred

remotely. (ECF No. 13, p. 22.) Further, Defendant CEA contends that the services at issue bore no connection to California, as CEA did not request Plaintiff to perform work in or toward that forum, Plaintiff does not allege that any such work was performed there, and CEA's retail business is located in Canada. (Id.) With respect to purposeful availment, Plaintiff contests that CEA's contacts are sufficient to constitute purposeful availment because "Defendant engaged in communications with a California resident, negotiated with that resident, directed the same California resident to perform work, and indeed worked alongside the California resident in the state." (ECF No. 20, p. 17.)

At this stage, the Court may consider Plaintiff's declaration in assessing whether a prima facie showing has been made. Plaintiff's declaration states that CEA repeatedly communicated with him through phone calls, text messages, and WhatsApp messages while he was in California, and that Plaintiff and his team performed that work in California after being requested to do. (ECF No. 20-1, Declaration of Abraham Gomez ("Gomez Decl."), ¶¶ 4-6, 9.) Plaintiff further avers that Namdar traveled to California[2] to meet in-person regarding Plaintiff's ongoing contributions and compensation, that CEA was aware that he was a resident of California, and that Namdar attended investor conferences in California on behalf of CEA. (Id. at ¶¶ 7, 8, 9.) Even viewing the evidence in light most favorable to the Plaintiff, the Court finds that Plaintiff has failed to make a prima facie showing of purposeful availment.

First, the Court finds Defendant CEA's alleged communications with Plaintiff insufficient to establish purposeful availment. The Ninth Circuit has made clear that remote communications between a plaintiff and a defendant, standing alone, do not suffice. See Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985) ("[U]se of mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state") (citation omitted); Perzow v. Hogeg, 826 F. App'x 615, 617 (9th Cir. 2020) (holding that emails and phone calls were insufficient to constitute purposeful availment). Likewise, the Court finds that the in-person meetings with Namdar in October 2025

[2] The Court observes that while Namdar's declaration states that in-person meetings took place in Puerto Rico, New York, and Wyoming, (ECF No. 13-1, ¶ 17), conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002).

are too limited to establish minimum contacts with California. Although Plaintiff declares that Namdar traveled to California to meet with Plaintiff regarding CEA, Plaintiff does not provide further detail regarding the nature or duration of those meetings beyond stating that they occurred over several days and concerned Plaintiff's contributions to CEA and the compensation allegedly owed to him. (Gomez Decl., ¶ 8.) Courts have found that limited contacts with California concerning a contract are insufficient to establish purposeful availment. See Picot v. Weston, 780 F.3d 1206, 1213 (9th Cir. 2015) (holding that in a contract dispute a defendant's "two trips to California did not create sufficient minimum contacts to subject [defendant] to personal jurisdiction [in California]"); Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th 1154, 1166 (9th Cir. 2023) (holding that two trips to the forum state relating to the parties' contractual relationship was not substantial or widespread to reflect an attempt to "gain the benefits and protections" of the forum state).

Plaintiff cites Decker v. Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986) to support the proposition that Defendant CEA directly sought Plaintiff's business in the forum state and created continuing obligations with Plaintiff. (ECF No. 20, p. 17.) However, Plaintiff's reliance is misplaced. In Decker, the Ninth Circuit found purposeful availment where a contract expressly required performance in the forum state—namely the delivery of coal into the forum. 805 F.2d at 840. Here, by contrast, Plaintiff fails to allege facts demonstrating that Defendant CEA sought to conduct business in California or undertook obligations requiring performance there. Indeed, Plaintiff alleges that he offered to invest in CEA without solicitation and began performing marketing work for CEA without any explicit request from the company. Such unilateral activity cannot establish purposeful availment. See Burger King Corp., 471 U.S. at 474. Moreover, the Ninth Circuit has held that "remote actions taken to service a contract in the forum state seldom lead to purposeful availment by themselves." Davis, 71 F.4th at 1165.

Lastly, the Court is not persuaded that Namdar engaged in significant activities in California merely by attending investor conferences in California—the location of which CEA had no influence over. See SDS Korea Co., Ltd. v. SDS USA, Inc., 732 F. Supp. 2d 1062, 1079-80 (S.D. Cal. 2010) (finding that defendant's presence at a California trade show insufficient to

demonstrate purposeful activity where the defendant had no choice in the location and there was no evidence that the defendant sold any products or otherwise contracted with California customers at the trade show); see also Picot, 780 F.3d at 1213 (holding that "a defendant's transitory presence will support jurisdiction only if it was meaningful enough to 'create a "substantial connection" with the forum State'") (quoting Burger King Corp., 471 U.S. at 475).

Accordingly, Plaintiff has not made a prima facie showing that Defendant CEA purposefully availed itself to the forum state.

(2) Defendant Thomas

Defendant Thomas argues that the alleged oral offer and subsequent discussions occurred outside of California, the shares at issue are for a Nevada company, and the services Plaintiff allegedly provided were for the benefit of a Nevada company. (ECF No. 35, pp. 20-21.) Defendant Thomas maintains that Plaintiff's residence is the only connection to California. (Id. at p. 21.) In opposition, Plaintiff contends that purposeful direction is the appropriate standard and does not separately analyze purposeful availment, asserting that the result would be the same under the purposeful direction test.[3] (ECF No. 37, p. 16 n.2.)

The relevant inquiry is whether Defendant Thomas's conduct in connection with the alleged agreement demonstrates that he deliberately sought to conduct business in California or created continuing obligations requiring performance in the forum. Plaintiff alleges that Defendant Thomas "conducts ongoing business in the State of California… when conducting business with Mr. Gomez concerning CEA." (Compl. ¶ 13.) Plaintiff also declares that he and his team performed services in California. (Id. at ¶ 15; Gomez Decl., ¶ 6.) However, Plaintiff does not identify evidence that Defendant Thomas requested or required that those services be performed in California. Rather, California's connection to the alleged conduct appears to arise solely from Plaintiff's residence, which is insufficient to confer personal jurisdiction.

Plaintiff further argues that Defendant Thomas engaged in sustained communications with him to solicit his business. (Compl. ¶ 4, 7, 26-27, 30-31; Gomez Decl., ¶ 4, 8; ECF No. 14-

[3] Plaintiff also directs the Court to his argument in opposition of Defendant CEA's motion to dismiss, (ECF No. 20, pp. 17-18), in which he contends that CEA purposefully availed itself of the benefits of California.

1, Ex. 2.) The evidence, however, does not establish that Defendant Thomas deliberately sought to establish or maintain a business relationship in California. Defendant Thomas declares that he never traveled to California for business in his capacity as a CEA board director, that he has never met with Plaintiff in California, and that both the July 31 and August 11 meetings took place in New York.[4] (ECF No. 35-4, Declaration of Hans Thomas ("Thomas Decl."), ¶¶ 4-6, 8.) Moreover, as discussed above, remote communications, including Whatsapp messages and telephone calls, are insufficient to establish purposeful availment. See Peterson, 771 F.2d at 1262; Perzow, 826 F. App'x at 617.

Accordingly, Plaintiff has not made a prima facie showing that Defendant Thomas purposefully availed himself to the forum state.

b. *Purposeful Direction*

Purposeful direction requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, Inc. v. Brands Techs. Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). Actions may be directed at the forum state even if they occurred elsewhere. Watts, 303 F.3d at 1111. However, "random, fortuitous, or attenuated contacts" are insufficient to create the requisite connection with the forum. Burger King, 471 U.S. at 475. An intentional act is one "denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended." Schwarzenegger, 374 F.3d at 806.

Plaintiff argues that Defendant CEA committed intentional acts by making fraudulent misrepresentations; that the alleged misrepresentations were aimed at California because CEA

[4] Plaintiff argues that Defendant Thomas's declaration introduces facts outside the scope of personal jurisdiction and creates a substantive factual dispute that the Court should disregard. (ECF No. 37, p. 12 n.1.) The Court disagrees. Plaintiff does not identify any allegation in the Complaint or his declaration that contradicts the location of the meetings. Rather, Plaintiff's objection appears to rest on the fact that the Complaint does not address where the meetings occurred. The absence of an allegation, however, does not create a factual dispute or preclude the Court from considering evidence bearing on personal jurisdiction. Accordingly, the Court considers Defendant Thomas's declaration in determining whether Plaintiff has established the requisite minimum contacts. The Court does not, however, consider Defendant Thomas's statement that he did not conduct any business in California, (Thomas Decl., ¶ 4), because that statement conflicts with Plaintiff's allegation that Thomas conducted ongoing business in California with respect to CEA. See Compl. ¶ 13; Dole Food Co., 303 F.3d at 1108.

solicited Plaintiff while he was in California, negotiated with him knowing he was a California resident, and sent its CEO to California to meet with Plaintiff and his team regarding the services at issue; and that CEA knew that harm from its action would likely be suffered in the forum state. (ECF No. 20, pp. 15-16.) Similarly, Plaintiff argues that Defendant Thomas committed intentional acts by making fraudulent misrepresentations; that the misrepresentations were aimed at California through solicitation and negotiation by phone and electronic messaging while Plaintiff was in California; and that Thomas knew that harm from his actions would likely be suffered in the forum state. (ECF No. 37, pp. 13-16.)

The Court takes issue with whether Defendants' failure to provide Plaintiff with the agreed upon shares and compensation was expressly aimed at the forum state. The Supreme Court has stated that courts must look "to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 134 S. Ct. at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum," and a "mere injury to a forum resident is not a sufficient connection to the forum." Id. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 1125. Further, the Ninth Circuit has explained that allegations that a defendant knew that a plaintiff resided in the forum and that it was foreseeable that plaintiff would suffer harm in the forum "will not, on its own, support the exercise of specific jurisdiction." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1069-70 (9th Cir. 2017). Here, Plaintiff relies on Defendants' communications with him in California and Defendants' alleged knowledge that he was a California resident. But these contacts reflect, at most, dealings with a forum resident and do not demonstrate that Defendants expressly aimed their conduct at California itself. As a result, Plaintiff has failed to establish purposefully direction.

* * *

Because Plaintiff has failed to satisfy the first prong of the test, the Court need not address the remaining two prongs. Boschetto, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."); Omeluk v. Langsten

Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) ("If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."). The Court, therefore, recommends both Defendant CEA's and Defendant Thomas's motion to dismiss for lack of personal jurisdiction be granted.

**B. Failure to State a Claim**

In the alternative, both Defendants CEA and Thomas contend that Plaintiff's claims against them should be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13, pp. 25-35; ECF No. 35, pp. 24-34.) Plaintiff asserts three claims against Defendant Thomas and four claims against Defendant CEA. (See ECF No. 2, pp. 15-18.) The Court addresses each claim in turn.

1. Fraud

Plaintiff asserts a claim for fraud against Defendants. (ECF No. 2, p. 15.) Defendant CEA argues that Plaintiff fails to state a claim for relief because his fraud claim arises out of an oral contract. (ECF No. 13, pp. 25-26.) CEA further argues that Plaintiff fails to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). (Id. at pp. 26-29.) Defendant Thomas likewise contends that Plaintiff's fraud claim does not satisfy Rule 9(b). (ECF No. 35, pp. 25-30.)

Under California law, a claim for fraud requires: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage. Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (Cal. 2004) (quoting Lazar v. Superior Ct., 12 Cal. 4th 631, 632 (1996)). The pleading standards for fraud claims are heightened. "A party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Thus, a party must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Moore v. Mars Petcare US, Inc., 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting Davidson v. KimberlyClark, 889 F.3d 956, 964 (9th Cir. 2018)). A court may dismiss a claim for failing to satisfy the heightened pleading requirements of Rule 9(b). Vess v. Ciba-Geigy Corp. USA, 317

F.3d 1097, 1107 (9th Cir. 2003).

The Court finds that Plaintiff has not adequately pleaded a claim for fraud. Plaintiff alleges that, on August 11, 2025, Thomas on behalf of CEA, represented that in exchange for a $3 million investment, Defendants would cause $4 million worth of CEA shares to be delivered to Plaintiff. (Compl. ¶ 48.) Plaintiff alleges that Defendants did not intend to provide the $4 million worth of shares at the time they made the promise. (Id. at ¶ 49.) But Plaintiff makes this allegation only "on information and belief" and does not allege any facts supporting that belief. (See id.) "Allegations of fraud based on information and belief generally do not satisfy the particularity requirement[]." Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989). Moreover, "something more than nonperformance is required to prove the defendant's intent not to perform his promise." Tenzer v. Superscope, Inc., 39 Cal. 3d 18, 30 (1985) (internal quotation marks and citation omitted). Plaintiff alleges only that Defendants ultimately failed to provide the additional $1 million worth of shares, (Compl. ¶ 50), which does not, without more, establish that Defendants lacked the intent to perform when they made the promise. Likewise, Plaintiff alleges that Defendants made the promise to induce Plaintiff to continue performing work for CEA. (Id. ¶ 51.) This allegation, however, speaks only to Defendants' alleged intent to induce reliance; it does not provide a factual basis for Plaintiff's assertion that Defendants knew the representation was false when made.

Accordingly, the Court recommends granting Defendants' motion to dismiss Plaintiff's fraud claim for failure to satisfy Rule 9(b)'s particularity requirement.

2. Promissory Estoppel

Plaintiff brings a claim for promissory estoppel against Defendants. (ECF No. 2, pp. 15-16.) Defendant CEA argues that the promise alleged by Plaintiff is not clear and unambiguous, that actual consideration was given, and that Plaintiff's reliance on Defendant Thomas's alleged promise was not reasonable. (ECF No. 13, pp. 29-32.) Defendant Thomas argues that Plaintiff fails to satisfy the particularity requirement of Rule 9(b) and that Plaintiff's allegations fail to meet the pleading standard. (ECF No. 35, pp. 30-32.)

In California, the elements of promissory estoppel are (1) a promise clear and

unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. Mend Health, Inc. v. Carbon Health Techs., Inc., 588 F. Supp. 3d 1049, 1056 (C.D. Cal. 2002) (citing Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 792 (9th Cir. 2012)). Where a promissory estoppel claim "sounds in fraud" or is "grounded in fraud", Rule 9(b) requires the claim to be pled with particularity. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

The Court finds that the terms of the promises are not sufficiently clear as to the scope of the parties' respective duties and the limits of performance. Plaintiff alleges that Defendants made two promises: first, that if Plaintiff agreed to invest in an additional $3 million, Thomas would ensure that he would give Mr. Gomez $4 million worth of CEA stock; and second, that Defendants agreed to pay Plaintiff $250,000 per month for his services. (Compl. ¶¶ 4, 7, 27, 35, 45.) Although Plaintiff alleges that he wired the $3 million investment, he does not allege when the CEA shares were to be provided following his investment or the material terms governing the exchange. Further, although Plaintiff alleges that he and his team performed marketing and advisory services, he does not identify the specific services he was required to perform, the duration of the alleged arrangement, or when the payments were to begin. At most, Plaintiff alleges that he and CEA representatives discussed various services Plaintiff could provide, but he does not allege facts demonstrating that those discussions resulted in a definite promise. (See Compl. ¶ 31.)

Accordingly, the Court recommends granting Defendants' motion to dismiss Plaintiff's claim for promissory estoppel.

3. Quantum Meruit

Plaintiff states a claim for quantum meruit against Defendant CEA. (ECF No. 2, pp. 16-17.) CEA argues that Plaintiff fails to state a claim because he does not allege that CEA required him to perform services, that Defendant Thomas directed such performance, or what services he personally performed for CEA. (ECF No. 13, pp. 32-34.) In opposition, Plaintiff argues that California law does not require him to personally perform the services and that services

performed by his employees or agents are sufficient. (ECF No. 20, p. 30.) Plaintiff further contends that the complaint alleges that the services were performed at CEA's request and that he has not been paid for the services provided to CEA. (Id. at pp. 30-31.)

Quantum meruit (or quasi-contract) "is an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." In re De Laurentiis Ent. Grp. Inc., 963 F.2d 1269, 1272 (9th Cir. 1992). To state a claim for quantum meruit, Plaintiff must show: (1) that he performed certain services for CEA; (2) that the services were rendered at CEA's request; and (3) that he was unpaid. Swafford v. IBM, 383 F. Supp. 3d 916, 931 (N.D. Cal. 2019). The request for services may be either express or implied. Day v. Alta Bates Med. Ctr., 98 Cal. App. 4th 243, 248 (2002).

The Court finds that Plaintiff fails to adequately allege that the services were rendered at CEA's request. The complaint alleges that upon observing deficiencies during Plaintiff's visit to CEA's offices, Plaintiff "sprang into action over one weekend and he and his team worked nearly around the clock and produced two press releases to help communicate to the market positive messages regarding CEA and its business." (Compl. ¶¶ 22-23.) The complaint further alleges that at CEA's request, Plaintiff asked two of his employees to begin assisting with some of CEA's deficiencies, including the website, public relations, and media work on or around August 13, 2025. (Id. at ¶ 24.) First, Plaintiff's allegation that he "sprang into action" appears to describe his own initiative in responding to CEA's deficiencies. The complaint as currently pleaded, does not allege facts demonstrating that CEA requested or directed Plaintiff to assist with the two press releases. Additionally, although Plaintiff later alleges that services were performed at CEA's request on or around August 13, 2025, he does not allege specific facts demonstrating that CEA expressly or impliedly requested the services. Rather, Plaintiff offers only a conclusory allegation that services were performed "at the Company's request." (See Compl. ¶ 24.) A conclusory allegation that a defendant requested services, without supporting factual allegations, is insufficient to state a claim for quantum meruit. See Standford Health Care v. Blue Cross Blue Shield of N.C., Inc., No. 21-cv-04598-BLF, 2022 WL 195847, at *9

(N.D. Cal. Jan. 21, 2022).

Accordingly, the Court recommends granting Defendants' motion to dismiss Plaintiff's claim for quantum meruit.

4. Unjust Enrichment

Lastly, Plaintiff asserts a claim for unjust enrichment against Defendants. (ECF No. 2, pp. 17-18.) Defendants argue that unjust enrichment is not a standalone cause of action and that Plaintiff's unjust enrichment claim is duplicative of his other claims. (ECF No. 13, pp. 34-35; ECF No. 35, pp. 32-34.) Defendant CEA further argues that Plaintiff cannot establish that it was unjustly enriched and Defendant Thomas argues that Plaintiff cannot establish that he received or retained a benefit. (ECF No. 13, p. 35; ECF No. 35, p. 23.)

Under California law, "[u]njust enrichment is not a cause of action, just a restitution claim." Hill v. Roll Int'l. Corp., 195 Cal. App. 4th 1295, 1307 (2011). A court, however, may construe an unjust enrichment claim as "the cause of action as a quasi-contract claim seeking restitution." Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). "To allege unjust enrichment as an independent cause of action, a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense." ESG Capital Partners, LP v. Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016) (citation omitted).

The Court is not persuaded by Defendants' argument that Plaintiff's unjust enrichment claim should be dismissed merely because it is duplicative of his other claims. The Ninth Circuit expressly held that the fact that a quasi-contract claim is "duplicative of or superfluous to" a plaintiff's other claims is not, standing alone, grounds for dismissal. Astiana, 783 F.3d at 762-63 (citing Federal Rule of Civil Procedure 8(d)(2)). Accordingly, the Court will not dismiss Plaintiff's unjust enrichment claim on the grounds that it is duplicative of his other claims.

That said, the Court finds that Plaintiff has not adequately pleaded a claim for unjust enrichment. First, it is unclear from the complaint what benefit Defendant Thomas received or retained through Plaintiff's services. Plaintiff alleges that he provided services to CEA, that CEA benefited from those services, and that he has not been compensated for his team's work. (Compl. ¶¶ 70-73.) Plaintiff further alleges that he made a $3 million investment after Defendant

Thomas promised him $4 million worth of CEA shares, but that he has not received $1 million worth of shares. (Id. at ¶¶ 68-69, 73.) Although the complaint states that "Defendants have unjustly retained undue benefits at the expense of [Plaintiff]," (Compl. ¶ 72), this conclusory allegation does not identify what benefit Thomas, as opposed to CEA, received or retained. Indeed, the complaint states that Plaintiff's services benefitted CEA. (See Compl. ¶ 71.) The Court is similarly unpersuaded by Plaintiff's argument that Thomas benefitted because he was a board member and significant shareholder of CEA, and "the Company's success was his success." (ECF No. 35, p. 34.) See AccuImage Diagnostics Corp. v. TeraRecon, Inc., 260 F. Supp. 2d 941, 958-59 (N.D. Cal. 2003) (holding that allegations that individual defendants benefited by virtue of their positions as officers, directors, or shareholders insufficient where plaintiff failed to allege facts showing that they actually received a benefit at plaintiff's expense).

As to Defendant CEA, the Court finds that Plaintiff has not adequately alleged that CEA was unjustly enriched. Plaintiff alleges that he made a $3 million investment and received $3 million worth of CEA shares. Although Plaintiff claims that he did not receive the additional $1 million worth of shares as allegedly promised, he nonetheless received consideration equivalent to the amount of his investment. See Lebrun v. CBS Television Studios, Inc., 68 Cal. App. 5th 199, 209 (2021) (affirming dismissal of unjust enrichment claim where defendant paid plaintiff for value of benefit conferred). With respect to Plaintiff's services, Plaintiff alleges that he provided services to CEA, that CEA benefitted from those services, and that CEA did not compensate him. Plaintiff, however, does not allege facts showing why CEA's retention of the benefit was unjust beyond its alleged failure to compensate him for the services. The mere nonpayment for services does not constitute unjust enrichment. See Phillippe v. Shapell Indus., Inc., 43 Cal. 3d 1247, 1263-64 (1987); Castillo v. Barrera, 146 Cal. App. 4th 1317, 1328-29 (2007).

Accordingly, the Court recommends granting Defendants' motion to dismiss Plaintiff's unjust enrichment claim.

/ / /

**C. Leave to Amend**

Defendant Thomas argues that leave to amend would be futile. (ECF No. 35, p. 34.) In opposition, Plaintiff states that any pleading deficiencies could be cured by amendment. (ECF No. 37, p. 27.)

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). In other words, "[a]bsent prejudice, or a strong showing of any of the reaming Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). The decision of whether to grant leave to amend is within the discretion of the district court. Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 523 (9th Cir. 2008).

The Court does not find there is an indication that Plaintiffs have engaged in undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, nor would there be futility of amendment or undue prejudice to Defendants. That said, the Court will recommend granting leave to amend Plaintiff's claims with the understanding that Plaintiff will do so only to the extent they believe in good faith that he can plead additional factual material that could satisfy the legal standards and deficiencies identified herein. See Fed. R. Civ. P. 15(a)(2); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motions to dismiss (ECF Nos. 13, 35) be GRANTED with leave to amend.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen**

**(14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Absent leave of the Court, any objections shall not exceed **fifteen (15) pages** and, absent good cause and leave of the Court, shall be limited to arguments previously presented by the parties or ruled upon by the Court, and shall not cite any new authority which could have been cited at the time of the filing.

The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 25, 2026**

STANLEY A. BOONE
United States Magistrate Judge